IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| DAVID BRENT TRAVIS, AS FATHER § | | PLAINTIFF |
| AND NEXT FRIEND OF C.T. § | | |
| § | | |
| v. § | | Civil No.1:12CV173 HSO-RHW |
| § | | |
| CAYNE STOCKSTILL, ET AL. § | | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER GRANTING IN PART
AND DENYING IN PART DEFENDANTS' MOTION
FOR QUALIFIED IMMUNITY AND TO DISMISS STATE LAW CLAIMS**

BEFORE THE COURT is the Motion for Qualified Immunity and to Dismiss State Law Claims [47] filed October 10, 2012, by Cayne Stockstill, Richard Imhoff, Cody Stogner, Kent Kirkland, and Walt Esslinger, Individually. David Brent Travis, on behalf of his minor son C.T., ["Plaintiff"] has filed a Response [59, 61] opposing the Motion, and Defendants have filed a Reply [74, 76]. The Court, having considered the pleadings on file, the briefs and arguments of the parties, and relevant legal authorities, finds that Defendants' Motion for Qualified Immunity should be granted as to Plaintiff's federal claims. The Court further finds that Defendants' Motion to Dismiss Plaintiff's state law claims should be denied with leave to reassert.

I. BACKGROUND

A.   Factual Background

Plaintiff alleges that the baseball program in place at Picayune High School has a long and established history of hazing. Second Am. Compl. [44] at p. 3. Specifically, Plaintiff contends that each year on "whistle day," the upperclassmen

members of the team haze, taunt, harass, and physically abuse the freshmen or new players on the team. Plaintiff describes "whistle day" as follows:

> [o]nce the whistle was blown, the coaches would leave the field knowing full well what was about to transpire. Once the coaches left the field, the freshmen were 'free game' for the upperclassmen. The upperclassmen would proceed to assault the freshmen in any way, shape, or form they saw fit. All current coaches were at some time prior to becoming coaches, players for Picayune High School baseball when these rituals transpired. Kent Kirkland was the head coach in prior years when 'whistle day' took place.

*Id.* ¶ 14, at p. 3.

C.T. attended Picayune High School and played on the baseball team during the 2011 school year and season. Plaintiff alleges that throughout the 2011 season C.T. was repeatedly subjected to hazing and assaults by older members of the baseball team. Specifically, Plaintiff alleges that on January 29, 2011, Defendant K.S., a fellow student and a minor, assaulted C.T. which resulted in a severe contusion and fractured rib. Sec. Am. Compl. [44] ¶ 17, at p. 4. Plaintiff further alleges that following the assault, K.S. continued to verbally taunt and harass C.T. and was also involved in a subsequent assault that occurred on April 19, 2011, where a freshman baseball player was seriously injured. *Id*. at ¶¶ 18-19. Plaintiff states that following the April 19, 2011, incident, C.T.'s emotional distress was exacerbated which resulted in him quitting the baseball team and transferring to a new school.

Plaintiff alleges that a pattern of inappropriate behavior and hazing was in place concerning the baseball team at Picayune High School and "[d]espite their

actual knowledge of the hazing conduct and assaults, the Picayune Memorial School District, Kent Kirkland, Walt Esslinger, Coach Stockstill, Cody Richard Imhoff, and Cody Stogner took no action to stop, remedy, or prevent such hazing activity and assaults." *Id.* ¶ 15, 21 at p. 3-4.

B.  Procedural History

On January 27, 2012, Plaintiff filed a Complaint against Cayne Stockstill,[1] Cody Stogner,[2] and Richard Imhoff,[3] in the Circuit Court of Pearl River County, asserting claims for negligence, gross negligence, assault, battery, infliction of emotional distress, civil conspiracy, negligent supervision, and violation of civil rights under 42 U.S.C. § 1983. Compl. [1-2] at pp. 23-27, att. to Not. of Removal. Plaintiff filed a First Amended Complaint in the Circuit Court of Pearl River County on May 11, 2012, naming K.S.,[4] Kent Kirkland,[5] Walt Esslinger,[6] and the Picayune School District as additional Defendants. First Amended Compl. [1-2] at

---

[1] Mr. Stockstill served as Head Coach of the Picayune High School baseball team during the 2011 season.

[2] Mr. Stogner served as Assistant Coach of the Picayune High School baseball team during the 2011 season.

[3] Mr. Imhoff served as Assistant Coach of the Picayune High School baseball team during the 2011 season.

[4] K.S. is the minor alleged to have hazed and assaulted C.T.

[5] Mr. Kirkland served as Principal of Picayune High School at the time of the events alleged in Plaintiff's Second Amended Complaint [44].

[6] Mr. Esslinger served as Assistant Principal of Picayune High School at the time of the events alleged in Plaintiff's Second Amended Complaint [44].

p. 9, att. to Not. of Removal.

The case was removed to this Court on May 31, 2012. Not. of Removal [1]. Plaintiff was thereafter granted leave to file a Second Amended Complaint and did so on October 9, 2012. Sec. Am. Compl. [44].[7] On October 10, 2012, Defendants filed the instant Motion. Defendants raise the affirmative defense of qualified immunity and assert that Plaintiff has failed to allege any constitutional violation committed by Defendants.

## II. DISCUSSION

A. Qualified Immunity

Once an official pleads qualified immunity, the burden then shifts to the plaintiff, who must rebut the defense and negate qualified immunity by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Michalik v. Hermann,* 422 F.3d 252, 262 (5th Cir. 2005)).

Qualified immunity is intended to shield government officials from liability for monetary damages for acts in the performance of discretionary functions that were objectively reasonable in light of clearly established law. *Harlow v. Fitzgerald,* 457 U.S. 800, 819 (1982); *Easter v. Powell,* 467 F.3d 459, 462 (5th Cir. 2006); *Thompson v. Upshur Cnty.*, 245 F.3d 447, 456 (5th Cir. 2001). "The doctrine of qualified immunity protects public officials from liability for civil damages 'insofar

---

[7]Plaintiff first amended his Complaint in state court prior to removal. First Am. Compl. [1-2].

as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jennings v. Patton,* 644 F.3d 297, 300 (5th Cir. 2011) (quoting *Pearson v. Callahan,* 555 U.S. 223, 231 (2009)).

To determine whether a public official is entitled to qualified immunity, the Court inquires as to: "(1) whether the facts that the plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Brown v. Strain,* 663 F.3d 245, 249 (5th Cir. 2011) (quoting *Pearson,* 555 U.S. at 230–33); *see also Saucier v. Katz,* 533 U.S. 194, 201 (2001); *Estep v. Dallas County, Texas,* 310 F.3d 353, 363 (5th Cir. 2002) (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)). "If the facts viewed in the light most favorable to the plaintiff do not show a constitutional violation, the officer is entitled to qualified immunity." *Saucier,* 533 at 201. Determining qualified immunity is "a question of law for the court, not a matter of fact for the jury." *Brown v. Callahan,* 623 F.3d 249, 253 (5th Cir. 2010). Defendants' Motion as it pertains to Plaintiff's claims asserted against the individual Defendants will be analyzed employing these legal principles.

B.  Plaintiff's Federal Law Claims

    1.  42 U.S.C. § 1983 Claim

Plaintiff alleges that:

> Defendants . . . as agents of the State of Mississippi, bore a duty to C.T. to refrain from using their position to deprive C.T. of his civil rights. Defendants . . . refused to take action to prevent ongoing hazing conduct

>in connection with the baseball team, despite having actual knowledge of a pattern of such hazing conduct. Defendants . . . were solely responsible and empowered, by virtue of their positions as state actors, to prevent the hazing conduct. In addition, Picayune Memorial School District had policies against such violence and hazing; however, Defendants demonstrated deliberate indifference to said policies and the rights of Plaintiff C.T.

Second Am. Compl. [44] ¶¶45-48 at pp. 8-9.

Plaintiff asserts that Defendants "willfully refused to take action to prevent ongoing hazing conduct in connection with the baseball team, despite having actual knowledge of a pattern of such hazing conduct." Am. Compl. [44] at pp. 8-9.

Section 1983 does not create substantive rights. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002). Rather, it provides a mechanism to enforce rights secured by federal law. *Id.*

>To state a claim under 42 U.S.C. § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.

*Doe ex. rel. Magee v. Covington Cnty. School Dist.*, 675 F.3d 849, 854 (5th Cir. 2012); *see also Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985).

Plaintiff sues Defendants Cayne Stockstill, Richard Imhoff, Cody Stogner, Kent Kirkland, and Walt Esslinger in their individual capacities. In support of the instant Motion, these Defendants have submitted their Affidavits, which all state that while they were aware of the two incidents that occurred on January 29, 2011, and April 19, 2011, they had no knowledge of any fighting, punching, pre-game hitting, or rough-housing among the members of the baseball team. Aff. of Cade Stockstill [47-1], att. as Ex. "A" to Defs.' Mot.; Aff. of Richard Imhoff [47-2], att. as

Ex. "B" to Defs.' Mot.; Aff. of Cody Stogner [47-3], att. as Ex. "C" to Defs.' Mot.; Aff. of Kent Kirkland [47-4], att. as Ex. "D" to Defs.' Mot.; Aff. of Walt Esslinger [47-5], att. as Ex. "E" to Defs.' Mot. Defendants further state that after the January 29, 2011, incident, an investigation was conducted, discipline was administered, a team meeting was held and the entire team was lectured about the incident and instructed to "keep their hands to themselves." *Id.* Defendants also deny that the whistle day ritual had ever occurred either while they were players or coaches. *Id.*

The Fifth Circuit has held that "a public school does not have a . . . special relationship with its students, requiring the school to ensure the students' safety from private actors." *Doe ex. rel. Magee*, 675 F.3d at 858. This general rule applies even when one student injures another student on school grounds. *See Walton v. Alexander*, 44 F.3d 1297 (5th Cir. 1995).

In the present case there is no dispute that the assault on C.T. was committed by a fellow student or private actor. There is no evidence before the Court demonstrating that Defendants, save for K.S., were present during the January 29, 2011, incident between K.S. and C.T. Nor is there evidence that any of the other named Defendants hazed, assaulted, or threatened C.T. Moreover, the evidence before the Court is insufficient to establish the existence of a policy or custom of hazing that was the moving force behind C.T.'s injuries. The only other specific hazing incident alleged by Plaintiff occurred on April 19, 2011, several months after the assault on C.T. Evidence of this later incident cannot be utilized for purposes of imputing knowledge of hazing and ongoing assaults to Defendants

prior to January 29, 2011. This single incident on January 29, 2011, is insufficient to establish a pattern, custom, or practice of Defendants ignoring hazing activity. Assuming arguendo that Defendants had such a policy or custom, Plaintiff has not alleged sufficient facts to state a constitutional violation in order to succeed on his claims against Defendants in their individual capacities. Defendants are entitled to qualified immunity.

2. <u>Substantive Due Process Claim</u>

Plaintiff alleges that Defendants "in allowing, condoning, and participating in the hazing as state actors, have violated Plaintiff's right to be free of state-occasioned damage to his bodily integrity, as guaranteed by the fourteenth amendment and due process." Second Am. Compl. [44] at pp. 9-10. According to Plaintiff, Defendants used their positions to create a dangerous environment for C.T. in allowing and encouraging the hazing of younger baseball players and Defendants were solely responsible and empowered, by virtue of their positions as state actors, to prevent the hazing conduct. Pl.'s Resp. [59] at p. 7.

The limited right to state protection from private violence arises out of the substantive due process component of the Fourteenth Amendment. *Doe ex. rel. Magee*, 675 F.3d at 856. The law makes clear that "schoolchildren have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir. 1994).

When confronted with claims levied against a school district that the district

is liable for a student's injury, the Court must examine whether the harm to that student was caused by a constitutional violation and, if so, whether the school district is responsible for that violation. *Collins v. City of Harker Heights,* 503 U.S. 115, 120 (1992). However, the Fifth Circuit has "stated time and again that <u>without an underlying constitutional violation</u>, an essential element of [school district] liability is missing." *Doe,* 675 F.3d at 866–67 (emphasis supplied).

Plaintiff contends that Defendants' actions and omissions created a dangerous condition, leading to ongoing hazing activity and ultimately injury to C.T. The Fifth Circuit has not adopted the state-created danger exception, whereby state actors can be held liable for harm caused by private actors when the state placed the individual in harm's way. The Court of Appeals has left open the possibility that it may adopt such an exception at some point in the future. *Id.* at 863-65. The Fifth Circuit has held that a plaintiff wishing to invoke the state-created danger exception would be required to prove "(1) the defendants used their authority to create a dangerous environment for the plaintiff and (2) that the defendants acted with deliberate indifference to the plight of the plaintiff." *Id.* at 865. The deliberate indifference element requires the defendants to create an environment that they know is dangerous. *Id.* The opportunity for a third party to harm the plaintiff must not have been available in the absence of the defendants' actions. *Id.*

As discussed previously, there is insufficient evidence before the Court to establish that Defendants used their positions to create a dangerous environment

for C.T. in allowing and encouraging the hazing of younger baseball players by upperclassmen. The evidence demonstrates that prior to the January 2011 incident, none of the Defendants were aware of any issues, no other players or students had reported hazing activity, and they only acquired knowledge that C.T. was assaulted sometime after the incident occurred. This is insufficient to sustain Plaintiff's burden.

Even assuming Plaintiff has established the existence of a constitutional duty for Defendants to protect C.T. from private violence, Plaintiff must still demonstrate either deliberate indifference or conduct that shocks the conscience. In *Alton v. Texas A&M University*, 168 F.3d 196 (5th Cir. 1999), a member of a voluntary student military training organization alleged that he was subjected to multiple incidents of hazing and abuse by fellow cadets. *Id.* at 198-99. Alton produced evidence of twenty-eight incidents of misconduct as well as evidence that government officials had been notified that Alton was being subjected to ongoing abuse. *Id.* at 200. The Fifth Circuit determined that sufficient evidence existed in order to infer knowledge of the hazing by school officials. The Court further determined that because there was no evidence that the school officials participated in the alleged hazing, and officials had disciplined the perpetrators and educated cadets about hazing, the evidence was insufficient to lead a reasonable official to believe that Alton's constitutional rights had been violated. *Id.* at 200-01.

In the present case, there is evidence of two events in which baseball players were allegedly assaulted, one of those being the incident in which C.T. was

assaulted by K.S.  The record evidence demonstrates that following the January 29, 2011, incident, discipline was administered and the players were admonished to keep their hands to themselves.  The evidence is insufficient to show that Defendants were deliberately indifferent to a situation they knew was dangerous.  As a result, Plaintiff has not shown that C.T. suffered a deprivation of a constitutional right as a result of the direct acts or omissions of Defendants.   Thus, Defendants are entitled to qualified immunity on this claim.

      3.      Equal Protection Claim

Plaintiff alleges that Defendants:

> in allowing, condoning, and participating in the hazing as state actors, have violated Plaintiff's fourteenth amendment right to equal protection. The normal policy followed by the Defendants was to punish the actions which led to the injuries suffered by the Plaintiff. Because those who committed the egregious assault upon the Plaintiff were upperclassmen who were vital to the success of the baseball team, they were not punished in accordance with school policy.  Plaintiff, as an underclass, male, freshman baseball player, was not afforded the same protection as other students who were not subject to the ritual hazing of the baseball team. Defendants . . . discriminated against Plaintiff based upon his age, sex, and participation in school athletics.  Defendants . . . discriminated against Plaintiff as they intentionally treated him differently from others similarly situated and there is and was no rational basis for the difference in treatment. Plaintiff is at minimum a 'class of one.'

Second Am. Compl. [44] at pp. 9-10.

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, §1.  "The equal protection clause essentially requires that all persons similarly situated be treated alike." *Mahone v. Addicks*

*Util. Dist. of Harris Cnty.,* 836 F.3d 921, 932 (5th Cir. 1988).  "[T]he Supreme Court has recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) (citing *Sioux City Bridge Co. v. Dakota Cnty.,* 260 U.S. 441, 450 (1923)); *Allegheny Pittsburgh Coal Co. v. Cnty. Comm'n of Webster Cnty., W. Va.,* 488 U.S. 336 (1989).  However, "if the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action—even if irrational—does not deny them equal protection of the laws." *Johnson v. Rodriguez,* 110 F.3d 299, 306 (5th Cir. 1997) (quoting *Brennan v. Stewart,* 834 F.2d 1248, 1257 (5th Cir. 1988)).

      Plaintiff's allegations are insufficient to support an equal protection claim against these Defendants individually.  The evidence demonstrates that following the January 2011 assault, and after Defendants were made aware of what had happened to C.T., no further assaults upon C.T. occurred or resulted from Defendants' conduct.  There is no evidence that Defendants intentionally treated C.T. differently, thus Plaintiff is unable to show that his constitutional right to equal protection was violated.  *See Stotter v. Univ. of Texas at Austin*, 508 F.3d 812, 824 (5th Cir. 2007); *C.H., II ex rel. L.H. v. Rankin Cnty. Sch. Dist.*, 415 F. App'x 541, 546 (5th Cir. 2011).  Accordingly, Defendants are entitled to qualified immunity on this claim.

4.   Fourth Amendment Claim

Plaintiff alleges that Defendants:

> had actual and constructive knowledge of the assaults which took place of [sic] the hazing rituals at Picayune High School . . . allowed the assaults to continue and did at times encourage the assaults. Throughout the 2011 baseball season, as part of the hazing rituals, private actors acted with the tacit and actual approval of the state actors [Defendants] . . . when they assaulted C.T.

Second Am. Compl. [44] at pp. 10-11.

The Fourth Amendment provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. Plaintiff has not alleged that any of the Defendant school officials or employees actually seized C.T. and there is no evidence that they did so. Rather, Plaintiff asserts that Defendants allowed and tacitly approved the assaults to continue. For the reasons stated previously by the Court and because Defendants were not present during the incident and had no previous knowledge of students being assaulted, Defendants did not have a constitutional duty to protect C.T. from fellow student and named Defendant K.S. Accordingly, Defendants are entitled to qualified immunity on Plaintiff's Fourth Amendment claim.

C.   Plaintiff's Remaining Claims

Plaintiff asserts both federal constitutional claims and state law claims against the named Defendants including the Picayune Memorial School District and

Defendant K.S. The pleadings before the Court are unclear as to whether Defendants acted pursuant to an official custom or policy of the School District, or that the School District implemented such an official custom or policy relating to hazing. However, because the School District was not included as a movant in the present Motion, the Court declines to address these issues. *See Shinn on Behalf of Shinn v. Coll. Station Indep. Sch. Dist.*, 96 F.3d 783, 786 (5th Cir. 1996); *Meadowbriar Home For Children, Inc. v. Gunn,* 81 F.3d 521, 533 (5th Cir.1996). Inasmuch as certain federal claims remain, the Court finds that Defendant's Motion to Dismiss Plaintiff's state law claims pursuant to FED. R. CIV. P. 12(b)(6), should be denied at this juncture, with leave to reassert.

### III. CONCLUSION

Based upon the foregoing, the Court finds that because Plaintiff cannot establish that Defendants, through their actions or omissions, violated a clearly established constitutional right and because Defendants conduct was objectively reasonable, Defendants Cayne Stockstill, Richard Imhoff, Cody Stogner, Kent Kirkland, and Walt Esslinger, are entitled to qualified immunity in their individual capacities as to Plaintiff's federal law claims. The Court further finds that Defendant's Motion to Dismiss Plaintiff's state law claims should be denied without prejudice at this time.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion [47] for Qualified Immunity and to Dismiss State Law Claims filed October 10, 2012, by Defendants Cayne Stockstill, Richard Imhoff, Cody Stogner, Kent Kirkland, and

Walt Esslinger, Individually is **GRANTED IN PART AND DENIED IN PART.** Plaintiff's claims for violation of 42 U.S.C. § 1983, the right to substantive due process, the right to equal protection, and violation of the Fourth Amendment against Cayne Stockstill, Richard Imhoff, Cody Stogner, Kent Kirkland, and Walt Esslinger, are **DISMISSED WITH PREJUDICE.**  The remainder of Defendants' Motion is **DENIED WITHOUT PREJUDICE**.

  **SO ORDERED AND ADJUDGED**, this the 16th day of September, 2013.


        *s/ Halil Suleyman Ozerden*
        HALIL SULEYMAN OZERDEN
        UNITED STATES DISTRICT JUDGE